May it please the court, my name is Amy Potter and I represent the appellee of the United States in this matter. This is a case in which the police officer had reasonable suspicion under the totality of the circumstances to prolong the stop and question the defendant. Specifically, defendant had begun circling the block at 2.45 a.m. in the morning. Officer Blazer, knowing that this was a high crime area and the M.O. for burglars in the area was to have one person burglarize the home while the other person circled the block waiting, diverted from a 911 call and began following the defendant. At that point, defendant, and these were the two cars on the road, sped through a stop sign or accelerated through a stop sign at that point. At that point, officer Blazer determined that he was going to make a traffic stop. When he did that, activating his lights and sirens, the defendant failed to stop and instead went for almost two blocks before he stopped. At this point, there were no other cars on the road and the defendant, this is approximately 2.46 a.m. when he continues and doesn't stop, so about a minute later. How fast was he driving? The record reflects around 20 miles per hour, not particularly quickly. There's no question and as the briefs note, the government has conceded that there was no attempt to elude, but there is still the issue that he didn't stop immediately on the road when there was nowhere, no one else on the road and he could have stopped at any point. So, officer Blazer has activated his lights and sirens and defendant has failed to stop immediately. Once he does stop, defendant throws up his arms, opens the door, throws up his arms and says, don't shoot me. This point, officer Blazer has seen someone accelerate through a stop sign, which is unusual and it indicated to him in his experience that either the defendant was trying to get away from him or simply wasn't paying attention at that point. Then when he failed to stop immediately, that was also unusual and officer Blazer knew in his experience that oftentimes people fail to stop because they're trying to hide something, they're even seeing videos of people firing weapons at officers at that rate of speed. And then combined with that, the very aberrant response of don't shoot me, when he is stopped, the officer had reasonable suspicion at that point that something else was going on. Officer Blazer then took the defendant's license and checked it, decided not to ticket him for the stop sign, returned to the car and asked the defendant where he was going. At this point, the defendant says he's going to his girlfriend's house. This continued to raise officer Blazer's suspicion because going to your girlfriend's house does not typically involve circling the block, running a stop sign if you're in a familiar area, you typically know where the stop signs are. And it doesn't explain the strange behavior saying don't shoot me as soon as the car is stopped. Based on this, officer Blazer continued to question the defendant. Officers are allowed to rely on their experience and training and draw reasonable inferences from the circumstances. Officer Blazer did just that in this circumstance. He was confronted with a series of events which he felt gave him suspicion that some criminal activity was afoot. This is precisely what we allow officers to do in this type of situation. We're in a late night, 2.45 a.m. situation where a defendant has failed to stop for an officer alone. This is precisely what is permitted under the case law. This is United States v. Arvizu from the Supreme Court, United States v. Perez specifically, United States v. Hill says we review it de novo. This is not like the two cases relied on the district court to in fact suppress the evidence because in United States v. Chavez, Venezuela, and United States v. Jones, in those instances the officers only had nervousness and an evasive answer to one question in order to justify their reasonable suspicion. What we're relying on here is more. What do you need, at what point do you need, I'm not sure I understand your argument. I apologize. Did they need reasonable suspicion to stop him? No, Your Honor. He needed reasonable suspicion at the point at which he decided not to ticket him. And the stop, traffic stop had ended. He stopped the defendant for a valid reason. He stopped the defendant for running through a stop sign. That's the valid reason at that point. However, he did continue the stop after the initial traffic violation had ended. At that point, the officer needed a reasonable suspicion to continue questioning the defendant. And at that point, we rely on the reasonable suspicion that we, I just stated the facts in that case. Well, what, then you make it a question of fact as to whether or not he had reasonable suspicion. And I take it the district court thought otherwise. I think that the district court made all the required findings of fact. And we don't dispute the findings of fact. It's the interpretation of those facts in this case that we dispute. And so we think that that, in fact, lends itself to reasonable suspicion. Under the jurisdiction, we're not disputing the actual findings. Does he have to have reasonable suspicion of something? I mean, he doesn't have any reasonable suspicion to think that Mr. Beard is violating the antitrust laws. Does he have to have reasonable suspicion he's violating drug laws? Does he have to have reasonable suspicion he's violating something? Or can he just have an intuition that says something funny is going on, and so I'm just going to hold him until I figure out what it is? The case law says you have to have reasonable suspicion that criminal activity is afoot. In this case... How specific do you have to be about knowing what the criminal activity is? I think you do have to have some general suspicion. I don't think you have to know the exact criminal statute that's been violated. In this case, I believe there's reasonable suspicion that he's involved in some sort of burglary activity. He's following the M.O. of the burglars in the area. He is in a high-crime area where there have been lots of burglaries. You said that that isn't why he was stopped. So I don't see how that would justify carrying on the questioning after he was stopped and they decided that he hadn't committed, that they weren't going to ticket him for traffic violations, that that's why he was stopped. I think he was permitted to stop him for the traffic violation at that point that interceded his evolving suspicion. When he decided not to ticket him, he had the factors he had relied on prior, the factors we had mentioned before, his circling the block and things like that which supported the conclusion of burglary. But he had also asked him after the stop had ended, right when the stop was ending, where were you going? And he said to see his girlfriend. And that just adds to it and, again, doesn't provide an explanation. How did he ask him at some point whether he had something that he shouldn't have or something like that? He did ask that. He asked that at multiple points during the stop. He asked it when he first took the license, do you have something that you're not supposed to have? And he said no. And then he asked it again. As the stop continued, he asked him on a couple of How many times does he get to ask the question before the defendant is free to go? As long as And how many times can he hold the defendant before the defendant begins to think that he's not free to go? I think that the record is clear here that the defendant was not free to go. The officer was still holding on to the defendant's license. And so the government concedes he wasn't free to go at this point. And I don't think he believed he was free to go at this point. How long, how much time had transpired from when the stop ended to when the search of the car took place? We know he's in custody approximately nine minutes after That's from the beginning to end. Well, the entire stop's approximately 13 minutes. Once he decided not to ticket him and return to the car, from that point to the time he's arrested is approximately nine minutes. Well, I thought that he, the defendant, said that they could pat him down. The defendant did give his consent to allow him to pat him down. And he got out of the car, and at that point, what happened? At that point, once they're patting him down, the backup officer is standing sort of cat a corner into the car and sees a gun on the floor of the car. At that point, he makes a secret signal to the officer that it's time to arrest the defendant. For what? At that point, they're just arresting him. I don't think they've decided on a charge, except they see the gun. Well, arrest him and figure it out later? Well, once they go back, they know he's a felon, and they charge him with felon in possession. But there's suspicion of a firearm in the car. But they didn't know at the time that they arrested him that he was a felon? I believe they did from doing the record checks. It's also illegal to carry a handgun that way in the Portland city limits, and he was in the Portland city limits. It was sort of a grab. Okay, you have about a minute left. Oh, if the court would allow, I'd reserve that for a minute. Well, as you point out, there's no dispute about the facts, really. Everybody agrees what they are. The question is, did the district judge come to the right conclusion? The real question is, did the district judge, in taking these undisputed facts, come to the right conclusion, which is something we reviewed de novo. Now, my question to you is, why is it unreasonable, given all these suspicious things that happened? It's late at night, the bad area, he intentionally refused to stop for the police officer, whatever else. Why is it unreasonable for the officer to make an inquiry? What are you doing tonight? They can't point to any particular crime that he was under investigation for. He was almost a head hunter. The government says that he's been reported as pretending to dance around the block, but that's not what the district court found. We've got a man up there throwing ball, made one lap, then made another lap, and then came to a stop sign. Now, we've also testified that he stole brake lights, parked back home to a police car, rolled through a stop sign, made a right, and the officer got behind the car. So there's really no circling the block, okay? So then the officer turns around and goes ahead and lights. The officer gives the vehicle a slow-to-act approach. He's slow to reach someone and kills two blocks. The court found that he did that here, right or left. He did that right or left, okay? He did that by the hand. He made a perfectly logical explanation. It's 3.5 and one-fourth. He's a black man in the windows. The officer can't see him in the car. He opens the door, sticks his hand up, says, oh shoot, the windows don't work. I'm opening my door. Okay, the officer says, okay, I'm not going to shoot. Fine. There's no more suspicion of any criminal activity. Why would he go see his girlfriend in the neighborhood? His birthday was in the area. Well, the officer had a cross-examination. They were doing science statistics. Why would he be circling around the block if he was just going to see his girlfriend? Why would he be circling around the block if he was going to see his girlfriend? There's one left, another left, and a right. So he's not circling. He's circling around his girlfriend's home in the neighborhood. The cop says, why didn't you stop? And he says, because I was scared. Well, you're giving more than what he said. He said, why didn't you stop? He said, I'm scared. He didn't embellish it the way you are now. I mean, doesn't the officer have a right to find out why the guy is scared to stop for the police? He comes out of the car with his hands up. Okay, he comes out of the car and he says, don't shoot, my windows won't roll down. He gets out of the car. The officer says to him, why didn't you stop? And his answer was, I was scared. Doesn't the officer, wouldn't it be a legitimate thing, a reasonable thing for the officer to inquire, why were you scared to stop for the police? Isn't that a reasonable thing to inquire? Someone intentionally refuses to stop for the police. Isn't it reasonable to make an inquiry, you know, why? And this detains him an extra couple of minutes, really. Mr. Needham, you're not challenging the officer's right to ask him where he's going. That was done before the traffic stop. At what point, at what question has the officer stepped over the line? So you tell us, you have to know about who's high security. The door was still open to the vehicle. Mr. Needham had full control. Turned over the door to the vehicle and left. And he told us this wasn't interrogated. He's not investigating anything. He wants to go and sit down with Mr. Needham. Tells him he can't. He tells him that he's going to risk his life. But it's not that easy. It's just a question of maybe more control. The district court relied on our court's decision in Chavez, Valenzuela. In your view, is that still good law? It's good law for the sense that the time frame of the traffic stop, whatever the police are going to do to that case, is the time frame when you question it. At that point, the board of the district court is going to question about the traffic stop. Right, but that's no longer the law. That's no longer the law. But it still holds the same premise that the time frame to take those tasks cannot be rescinded unless you have the problem. Well, but you can change the subject. You can, absolutely. So that, in a sense, always prolongs a traffic stop into something that is going other than a traffic stop, doesn't it? It may prolong it, but not unreasonably. There were questions here that asked, well, who should the district court have to say no, no, no? I can't. If you interrogate them before they can do all the tasks, I think that would be unreasonable. Well, so this wasn't unreasonable? Oh. Well, at what point was this stopped? Was this stop prolonged unreasonably? Well, ... It was the district court's decision before the supreme court's decision in ... supreme court's decision in, what is it, Mueller? No, no, versus Mueller. Yeah. Mueller? It was before that. Okay. ... ... ... ... ... ... ... ... ... ... ... ... ... ... Would that have given the officer the right to search the car? I mean, he asked him for consent, which he refuses. Does he then have reasonable suspicion to search the car? ... ... ... Thank you. It's just argued as submitted.
judges: Schroeder, Silverman, Bybee